## OWENS v. BRUCE.

(Circuit Court of Appeals, Fourth Circuit. May 7, 1901.)

### No. 389.

BANKRUPTCY—SALE OF GOODS BY TRUSTEE—CONSTRUCTION OF CONTRACT.

A trustee in bankruptcy solicited sealed bids for the stock of goods of the bankrupt, stating the "invoice price" of the stock. A bidder, who was given full opportunity to examine the stock, and who made such examination to some extent, made a lump bid therefor, which was accepted. *Held*, that he was not entitled to a deduction from the amount bid because of the fact that a small portion of the stock had been purchased by the bankrupt from another merchant for 50 per cent. of the price at which the trustee invoiced it, the invoice price correctly stating the prime cost of such goods in the market.

Appeal from the District Court of the United States for the District of South Carolina, in Bankruptcy.

L. O. Patterson (H. J. Haynsworth, on the brief), for appellant.
John H. Earle, for appellee.

Before SIMONTON, Circuit Judge, and PURNELL and WADDILL, District Judges.

WADDILL, District Judge. The question presented by this appeal is the correctness of the decision of the lower court in determining the effect of a certain offer made by the appellant, Frank C. Owens, to the appellee, trustee of the bankrupt estate, for the purchase of the bankrupts' stock of goods, arising from the use of the words, referring to the said trustee's advertisement of the stock of goods, "Inventorying $10,571.76, as per your circular letter," the con-

tention of the appellant being that, as Alverson Bros. had acquired about $1,400 of the stock thus advertised at 50 per cent. of the original cost price, therefore he should be entitled to a corresponding deduction in his offer to the trustee. The case was fully heard by the referee upon evidence taken by him, and he reported that the appellant was not entitled to such deduction, but ought to pay the full amount of his offer, to wit, $7,050.50, to which action of the referee exception was taken, and the same question was presented for review to the lower court, and that court, in a well-considered opinion, in which this court fully concurs, and adopts as its own, confirmed the report of the referee, the opinion of Judge Brawley being as follows:

"The question presented by this petition for review arises out of the following facts: J. B. Bruce, a trustee of the bankrupt estate of Alverson Bros., sent to a number of persons a circular letter inviting sealed bids up to 12 m., May 26th, for the stock of goods of the bankrupts, representing that:

" 'This stock, which is composed of seasonable goods, comparatively new, and in good order, and which has been inventoried at invoice prices, consists of boots, shoes, clothing, gents' furnishing goods, millinery, dry goods, notions, and fixtures.

| | |
|---|---|
| Boots and shoes, inventory | $ 6,424 69 |
| Clothing, gents' furnishing goods, inventory | 2,029 22 |
| Dry goods, millinery, and notions, inventory | 1,964 55 |
| Fixtures, inventory | 143 00 |

$10,571 76'

"On May 21st, Frank C. Owens addressed a letter to the trustee, saying: 'I beg to offer you $7,050 for the bankrupt stock of Alverson Bros., inventorying $10,571.76, as per your circular letter.' This and other bids were opened on May 26th, and, it appearing that bid of Owens was the highest, it was duly accepted, and Owens was notified of the acceptance; and a few days later the trustee and Owens proceeded to check the inventory of the goods, which was found to be in the main correct, with the exception of a few clerical errors, which were corrected. Included in the stock of goods were some articles of merchandise which had been purchased by the bankrupts from one Robinson, inventoried at about $1,400, that being the original invoice price when bought by Robinson; but, as Alverson Bros. had bought this stock from Robinson at 50 per cent. of their cost, Owens claims that he should be allowed a deduction on his bid for the difference between the inventory figures and the actual cost to Alverson; the amount of deduction claimed being about $570. The referee refused to allow this deduction, and the petition impeaches the correctness of his conclusion. It appears that, before making his bid, Owens, by permission of the trustee, had been allowed to examine this stock of goods, and that he went to the storehouse for that purpose, accompanied by his clerk, and made a superficial examination. Full opportunity, however, was given him of making a thorough examination, and it also appears that he knew that a portion of the stock of goods had been bought by Alverson Bros. from Robinson at a low figure. The precise question is whether, under the terms of the contract, Owens shall pay in accordance with the original invoice price of the goods, or whether he shall be allowed a deduction because Alverson Bros. had bought a certain portion at 50 per cent. of the original invoice price. An invoice is defined to be a written account of the particulars of merchandise shipped or sent to a purchaser, consignee, etc., with the value or prices and charges annexed. It would scarcely be contended that Owens would be released from payment of any portion of this stock of goods if it had happened that the father of the bankrupts, for the purpose of setting them up in business, had made a gift to them of a certain portion of the stock of merchandise; and if, by good fortune, Alverson Bros. had secured a portion of a valuable stock of goods at

10 per cent. or 25 per cent. of their value, there would be no misrepresentation if they had stated the invoice price of their goods at the original prime cost. That is, in fact, what is commonly applied by the words 'invoice price,' which the Standard Dictionary defines to be 'prime cost of goods invoiced.' In Lewis v. Rucker, 2 Burrows, 1167, Lord Mansfield, in an insurance case, said: 'The insurer must pay the prime cost; that is, the value of the thing insured at the outset;' and in Le Roy v. Insurance Co., 7 Johns. 343,' Justice Thompson says 'that "invoice" is sometimes used and understood as containing an account of the prime cost of the articles specified.' Thus, in Marshall, it is said the 'loss is estimated according to the prime cost; that is, the invoice price.' And again, 'The prime cost—that is, the value of the thing insured at the outset—is what the underwriter is to pay.' There is no dispute that the inventory here did not correctly give the invoice price,—that is, the prime cost of the goods invoiced to Robinson,—and, inasmuch as it clearly appears that Owens, before making his bid, had full opportunity to examine the goods, and to ascertain whether or not the inventory correctly stated the original invoice price, and as his bid was for a lump sum, I am of opinion that he is not entitled to the reduction claimed, and the decision of the referee is sustained."

The decree of the lower court is affirmed.